1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                               San Francisco Division

11

12    STEVEN VACHANI, et al.,

                                                    Case No. 15-cv-04296-LB
13              Plaintiffs,

14        v.                                        **ORDER DENYING
                                                    DEFAULT JUDGMENT**
15    ARTHUR YAKOVLEV, et al.,
                                                    [Re: ECF No. 24]
16              Defendants.

17                                 **INTRODUCTION**

18        This is a defamation suit. Plaintiffs Stephen Vachani and his company, Serendipity Ventures,

19    Inc., claim that the defendants maligned them in Internet posts. They sue for libel and false-light

20    invasion of privacy. The defendants were properly served with a summons and the complaint but

21    have neither answered nor otherwise appeared. The clerk of court entered their default. (ECF No.

22    19.)[1] The plaintiffs then moved for default judgment. (ECF No. 24.) The court finds that this

23    motion can be decided without oral argument — *see, e.g., Greathouse v. JHS Sec., Inc.*, 784 F.3d

24    105 (2nd Cir. 2015); Fed. R. Civ. P. 55(b)(2); Civ. L.R. 7-1(b) — and now denies the plaintiffs'

25    motion. The plaintiffs have not shown that this court can exercise personal jurisdiction over the

26    defendants.

27    _____

28    [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
      ECF-generated page numbers at the top of documents.

      ORDER (No.  15-cv-04296-LB)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### GOVERNING LAW

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for — and the court may grant — a default judgment against a defendant who has failed to plead or otherwise defend an action. *See Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir. 1977)). But default cannot save claims that are not adequately pleaded: "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Furthermore, in weighing a default-judgment motion, "[t]he district court is not required to make detailed findings of fact." *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Nor must it necessarily hold a hearing before entering a default judgment. *See, e.g.,* Fed. R. Civ. P. 55(b)(2) (court "*may* conduct hearings . . . when it needs to . . . determine the amount of damages"). Relief awarded by default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Where punitive damages are sought, however, because they are inherently neither liquidated nor simply computable, a hearing is generally needed. *Sprint Nextel Corp. v. Ngo*, 2014 WL 869486, *2 (N.D. Cal. Mar. 3, 2014) (citing *Dolphin v. Ruiz,* 2008 WL 4552940 (C.D. Cal. 2008)).

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment," *Draper*, 792 F.2d at 924-25; that decision lies within the court's discretion, *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Default judgments are generally disfavored because "cases should be decided on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In deciding whether to enter a default judgment, courts in the Ninth Circuit consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the material facts;

(6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

## STATEMENT

### 1. The parties

Plaintiff Stephen Vachani is the managing director and CEO of plaintiff Serendipity Ventures, Inc.[2] Serendipity Ventures apparently invests in startup businesses; the plaintiffs describe the company as one "that co-founds, builds, and invests in new projects from the earliest stages . . . ."[3] Defendant Arthur Yakovlev is Mr. Vachani's "former associate."[4] Defendant Lucien Peres is Mr. Yakovlev's "girlfriend"; "[s]he has no association with either of the plaintiffs."[5] Neither defendant is a minor, incompetent, or in U.S. military service (and thus possibly exempt from default-judgment procedure).[6] The plaintiffs properly served the defendants with a summons and the complaint,[7] but neither defendant has answered or otherwise appeared in this case.

### 2. The offending statements

This case centers factually on material that the defendants allegedly published ("in . . . text, video[,] and audio") on the Internet. According to the plaintiffs, defendant Yakovlev posted offending statements on www.quora.com; at the plaintiffs' request, Quora removed the material.[8] Yakovlev posted the same material on YouTube. The plaintiffs asked YouTube to remove the material, but YouTube refused.[9] The Quora and YouTube posts are "substantially similar and

---

[2] Compl. – ECF No. 1 at 4 (¶ 20).

[3] *Id.*

[4] *Id.* at 5 (¶ 22).

[5] *Id.* at 5 (¶ 23).

[6] Anderson Decl. – ECF No. 24-1 at 1 (¶ 3).

[7] ECF Nos. 12-13 (proof of service).

[8] Compl. – ECF No. 1 at 1-2, 5 (¶¶ 1-3, 24).

[9] *Id.* at 6 (¶ 28).

contain identical defamatory [s]tatements."[10] The challenged statements appear as answers to the questions: "Serendipity Ventures[:] What was your experience like[?]" and "Has anyone ever worked with Steven (Steve) Vachani or Serendipity Ventures[?]"[11] Under the name Arthur Yakovlev appear the following responses (all grammar, usage, spelling, and punctuation in original):

- Did not pay in terms. He paid less than $300 per month. In hos house I am was robbed. If you need more money don't agree. Last time he did not pay 1 months, guys was without food. Did not pay for place where you live. When I am asked live alone in separated place he is not was agree with it. All time problems with money. If you need help with hospital or gym - he not will do it.

- So if you wonna join in startup and work with him without money and sometimes without food — you can do it. Without health help you can join and maybe take millions.

- He is without money.[12]

Under the name Anonymous the following statements appear:

- He is con-artist of the highest order.

- He is being sued by the employees for embezzlement, did not pay salaries, probably stole company money. He is a liar, a thief and as it has already been proven by US courts, a convicted SPAMMER.

- He now owes money both in his resident country of Brazil and also in the USA, he owes MILLIONS and probably will never be able to pay.

- Don't do business with this guy if you have the chance, he is morally corrupt. And a liar with no money.[13]

---

[10] *Id.* at 5 (¶ 26).

[11] ECF Nos. 1-2 at 2, 1-3 at 2.

[12] Compl. – ECF No. 1 at 5-6 (¶ 26); Exhibits – ECF Nos. 1-2 at 2, 1-3 at 2.

[13] *Id*.

The plaintiffs explain that these statements also "appear[] as audio and video" on YouTube.[14] They call all the statements false.[15] They allege that the remarks were made with "malice" and an "intent to injure" them.[16] They have confirmed that defendant Yakovlev owns the YouTube accounts on which the offending material was posted.[17] They state that the same material was posted at a third website in addition to Quora and YouTube.[18]

About defendant Peres, the plaintiffs are more succinct and more vague. They allege:

> Further defamatory statements of the same nature as those in the Quora Posts were posted by Defendant Lucien Peres on and through www.Facebook.com . . . . Peres sent direct defamatory messages to known associates of Vachani and posted comparable messages on the public "Timelines" of such associates on [Facebook].[19]

The plaintiffs allege that these postings have caused them "real and actual loss in the form of reputational damage, compromised professional opportunities, emotional distress and out-of-pocket remedial costs, among other harms."[20] They state that that they have been damaged "in an amount not less than $75,000."[21]

### 3.  Procedural posture

The plaintiffs bring two claims challenging these posts: (1) libel and (2) invasion of privacy by publishing information that placed the plaintiffs in a false light.[22] They ask for general, special, and exemplary damages.[23] They seek compensatory damages "in an amount not less than $75,000," and punitive damages "in an amount not less than $150,000."[24] They requests costs of

---

[14] Compl. – ECF No. 1 at 5 (¶ 26).

[15] *Id.*

[16] *Id.* at 7 (¶ 31).

[17] Anderson Decl. – ECF No. 24-1 at 2 (¶¶ 5-6).

[18] Compl. – ECF No. 1 at 5 (¶ 25). The third website, www.findncast.com, appears to be defunct.

[19] *Id.* at 2 (¶ 5).

[20] *Id.* at 3, 7 (¶¶ 10, 30).

[21] *Id.* at 7 (¶ 30).

[22] *Id.* at 7-11 (¶¶ 32-56).

[23] *E.g. id.* at 11.

[24] *E.g., id.* at 7 (¶¶ 30-31).

United States District Court
Northern District of California

$594.04[25] and post-judgment interest under 28 U.S.C. § 1961(a).[26] They also seek an injunction that orders the defendants to remove the offending posts and to refrain "from repeating the defamation."[27] They have filed evidence supporting their claims.[28] The defendants were served with a summons and the complaint but, again, they have not appeared.

## ANALYSIS

### 1.  Jurisdiction

The court cannot enter a default judgment unless it has jurisdiction over both the subject matter and the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Williams v. Life Sav. and Loan,* 802 F.2d 1200, 1203 (10th Cir. 1986) (court has "affirmative duty" to ascertain jurisdiction in considering default judgment).

### 1.1 Subject-matter jurisdiction

This court has subject-matter jurisdiction of this case under the diversity provisions of 28 U.S.C. § 1332. Plaintiff Vachani is a resident of California; plaintiff Serendipity Ventures is incorporated in Delaware; the defendants reside in Brazil.[29] The amount in controversy exceeds $75,000, excluding interest and costs.[30]

[25] Anderson Decl. – ECF No. 24-1 at 2-3 (¶¶ 7-8)

[26] ECF No. 24 at 11-12.

[27] Compl. – ECF No. 1 at 11; ECF No. 24 at 10-11. Strictly speaking, the complaint asks the court only for an injunction compelling the defendants to "depublish" the challenged material. The injunction against repeated defamation appears only in the plaintiffs' default-judgment motion. The court deems the latter relief to be the same "in kind" as the injunction sought in the complaint. *See* Fed. R. Civ. P. 54(c).

[28] *See* Compl. – ECF Nos. 1-2, 1-3 (exhibits); Anderson Decl. – ECF No. 24-1.

[29] Compl. – ECF No. 1 at 3 (¶ 12).

[30] *See id.* at 9-11 (¶¶ 48, 56) (prayers for relief).

United States District Court
Northern District of California

**1.2 Personal jurisdiction**

"It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." *Donell v. Keppers*, 835 F. Supp. 2d 871, 876 (S.D. Cal. 2011) (default-judgment case) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A federal court sitting in diversity borrows the long-arm jurisdictional statute of the forum state. *See, e.g., Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). California's long-arm statute authorizes the exercise of personal jurisdiction on any basis that is consistent with the state or federal constitution. Cal. Code Civ. P. § 410.10. The personal-jurisdiction analysis thus collapses into a single inquiry under federal due process. *See, e.g., Lake,* 817 F.2d at 1420.

Personal jurisdiction may be either general or specific. *See, e.g., Schwarzenegger*, 374 F.3d at 801-02. General personal jurisdiction "permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.* at 801. Specific personal jurisdiction subjects a non-resident defendant to a court's power only for claims arising out of the defendant's activity in the forum state. *See id.* at 801-02. The plaintiffs' allegations do not begin to show that the defendants have the "continuous and systemic" contact with California, *id.* at 801, that would support general personal jurisdiction. The only jurisdiction that might extend over the defendants is therefore specific personal jurisdiction.

The Ninth Circuit uses a three-part test to analyze assertions of specific personal jurisdiction:

1. The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2. The claim must be one which arises out of or relates to the defendant's forum-related activities; and

1      3.   The exercise of jurisdiction must comport with fair play and substantial justice, *i.e.,* it must

2           be reasonable.

*Id.* at 802. The plaintiffs bear the burden of satisfying the first two prongs of this test. *Id.* If the

plaintiffs fails to satisfy either prong, then personal jurisdiction is not established. If the plaintiffs

satisfy both of the first two prongs, "the burden then shifts to the defendant[s] to 'present a

compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger*

*King Corp. v. Rudzewicz,* 471 U.S. 462, 476-78 (1985)). For the reasons that follow, the court

holds that the plaintiffs have not established specific personal jurisdiction.

### 1.3 Purposeful direction

The first prong requires a defendant to either "purposefully avail" itself of the privilege of

conducting business within the forum or "purposefully direct" activities toward the forum. *See*

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Tort claims are "most

often" analyzed under the purposeful-direction test. *See Craigslist, Inc. v. Kerbel*, No. C 11-3309

EMC, 2012 WL 3166798, *4 (N.D. Cal. Aug. 2, 2012); *Schwarzenegger*, 374 F.3d at 802 ("most

often"). Purposeful direction exists when a defendant commits an act outside the forum state that

was intended to and does in fact cause injury within the forum state. *Calder v. Jones*, 465 U.S.

783, 788-89 (1984). Under the *Calder* "effects test," the defendant must (1) commit an intentional

act (2) expressly aimed at the forum state (3) that causes harm that the defendants knows is likely

to be suffered in the forum state. *E.g., Craigslist*, 2012 WL 3166798 at *4.

#### 1.3.1   Intentional act

As to the intentional-act requirement, the Ninth Circuit "construe[s] 'intent' . . . as referring to

an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a

result or consequence of that act." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124,

1128 (9th Cir. 2010) (quoting *Schwarzenegger*, 374 F.3d at 806). The plaintiffs have "easily

satisfied" this element: They allege that the defendants posted defamatory statements about them

to YouTube. *See Brayton Purcell*, 606 F.3d at 1129 (intentional act "easily" found where defendant

1    posted copyright-infringing material to website) (citing cases); *Rio Props., Inc. v. Rio Int'l*

2    *Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (operating a website was intentional act); *eAdGear,*

3    *Inc. v. Liu*, 2012 WL 2367805, *6 (N.D. Cal. June 21, 2012) (same; operating website that posted

4    statements about plaintiff's business).

6        **1.3.2   Express aiming and likely harm**

7        The plaintiffs' allegations fail, however, over the last two requisites of the *Calder* test:

8    "express aiming" toward and "likely harm" in the forum. Express aiming entails something more

9    than mere foreseeability. *See Brayton Purcell*, 606 F.3d at 1129. Express aiming exists "when the

10   defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff *whom the*

11   *defendant knows* to be a resident of the forum state." *CollegeSource, Inc. v. Academyone, Inc.*, 653

12   F.3d 1066, 1077 (9th Cir. 2011) (quotations and citations omitted) (emphasis added); *accord*

13   *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). "The final

14   element" under *Calder* — likely harm — "requires that [a defendant's] conduct caused harm *that*

15   *it knew* was likely to be suffered in the forum." *Brayton Purcell*, 606 F.3d at 1131 (emphasis

16   added).

17       These last elements thus both require that the defendants knew that their activity was directed

18   toward, and would likely cause harm in, California. The plaintiffs fall short in alleging that the

19   defendants knew these things. Two items in the plaintiffs' proof may speak to these points. First,

20   the record shows that Google, Inc. (which operates YouTube) is located in Mountain View,

21   California. (*See* ECF No. 24-1 at 10-11.) Second, the plaintiffs allege that defendant Yakovlev is

22   their "former associate." (Compl. – ECF No. 1 at 5 [¶ 22].) (This is not true of defendant Peres;

23   the plaintiffs describe her as having "no association with either" of them. (Compl. – ECF No. 1 at

24   5 [¶ 23]).) From these facts one could infer several things. One could infer that Mr. Yakovlev knew

25   that he was posting to a website maintained in California; that, as the plaintiffs' "former

26   associate," he knew that they were located in this state; and, finally, that he therefore knew that his

27   activity was likely to cause harm in California. From the little that the plaintiffs offer in this

28

United States District Court
Northern District of California

1    regard, in other words, the court could ride a string of inferences to conclude that the defendants

2    purposely directed their acts toward California within the meaning of the *Calder* effects test.

3        The court thinks that this is too inferential for the purposes of fixing personal jurisdiction.

4    Jurisdiction is of course critical to any adjudication. And it is the plaintiffs' burden to establish that

5    jurisdiction. Jurisdiction cannot be supposed. *See Hildreth v. Unilever U.S., Inc.*, 2010 WL

6    5174385, *2 (C.D. Cal. Dec. 15, 2010) ("courts will not infer allegations supporting the exercise

7    of [subject-matter] jurisdiction") (citing, *inter alia*, *Tosco Corp. v. Communities for A Better*

8    *Environment*, 236 F.3d 495, 499 (9th Cir. 2001) (pleadings must show "affirmatively and distinctly

9    . . . whatever is essential to federal jurisdiction")). Without more positive, direct, concrete

10   allegations that the defendants knew that their conduct was likely to cause harm *in California*, the

11   plaintiffs have failed to meet this part of the *Calder* test and so have not shown that the defendants

12   have such minimum contacts with this state that personal jurisdiction can constitutionally extend

13   over them. *Cf. Brayton Purcell*, 606 F.3d at 1131 (finding foreseeable harm under *Calder* where

14   plaintiff "specifically alleged" that defendant knew plaintiff was a resident of California and that

15   challenged acts would cause injury there); *eAdGear*, 2012 WL 2367805 at *6-*7 (finding express

16   aiming where it was "clear that Defendants knew or should have known they were targeting a

17   California corporation"); *Inc21.com Corp. v. Flora*, 2008 WL 5130415, *3-*4 (N.D. Cal. Dec. 5,

18   2008) (same; plaintiff alleged that "defendants knew [plaintiff] to be a resident of California" and

19   contract had California choice-of-law clause).

20                                     *   *   *

21       Because the plaintiffs have not established these requisites, the court does not reach other

22   elements of the "minimum contacts" jurisdictional analysis; nor does it embark upon *Eitel's*

23   default-judgment analysis.

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

The court denies the plaintiffs' motion for default judgment. The plaintiffs have not shown that this court can exercise personal jurisdiction over the defendants. The plaintiffs may amend their complaint, or supplement their default-judgment submissions, or both; if they file an amended complaint, they must obtain a new entry of default, and can then file a new motion for default judgment. The plaintiffs must serve any new motion for default judgment on the defendants by all reasonable means.

This disposes of ECF No. 24.

**IT IS SO ORDERED.**

Dated: April 21, 2016

_____

LAUREL BEELER
United States Magistrate Judge