UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| STEVEN VACHANI, et al., | Case No. 15-cv-04296-LB |
| Plaintiffs, | |
| v. | **ORDER DENYING DEFAULT JUDGMENT** |
| ARTHUR YAKOVLEV, et al., | Re: ECF No. 34 |
| Defendants. | |

## INTRODUCTION

This is a defamation suit. Plaintiffs Stephen Vachani and his company, Serendipity Ventures, Inc., claim that the defendants maligned them in internet posts. They sue for libel and false-light invasion of privacy. The defendants were properly served with a summons and the complaint but have neither answered nor otherwise appeared. The clerk of court entered their default. (ECF No. 19.)[1] The plaintiffs have moved for default judgment. (ECF No. 34.) This is their second motion for default judgment; the court denied their first one for lack of personal jurisdiction over the defendants (who apparently live in Brazil). (ECF Nos. 24 (motion), 27 (order).) The court set hearings on December 1 and December 22, 2016. No one appeared. The court can decide the

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER — No. 15-cv-04296-LB

present default-judgment motion without oral argument. *See* Civil Local R. 7-1(b). The court again denies the motion. The plaintiffs still have not shown that this court can exercise personal jurisdiction over the defendants. Because it may help guide this case going forward, the court also substantively analyzes the plaintiffs' claims.

## STATEMENT

### 1. Facts

#### 1.1 The parties

Plaintiff Stephen Vachani is the managing director and CEO of plaintiff Serendipity Ventures, Inc.[2] Serendipity Ventures apparently invests in startup businesses; the plaintiffs describe the company as one "that co-founds, builds, and invests in new projects from the earliest stages . . . ."[3] Defendant Arthur Yakovlev is Mr. Vachani's "former associate."[4] Defendant Lucien Peres is Mr. Yakovlev's "girlfriend"; "[s]he has no association with either of the plaintiffs."[5] Neither defendant is a minor, incompetent, or in U.S. military service (and thus possibly exempt from default-judgment procedure).[6] The complaint alleges that the defendants are of "unknown citizenship" but are "domiciled in Brazil."[7] The plaintiffs properly served the defendants with a summons and the complaint,[8] but neither defendant has answered or otherwise appeared in this case.

#### 1.2 The offending statements

This case centers factually on material that the defendants allegedly published ("in . . . text, video[,] and audio") on the internet. According to the plaintiffs, defendant Yakovlev posted

---

[2] Compl. – ECF No. 1 at 4 (¶ 20).
[3] *Id*.
[4] *Id.* at 5 (¶ 22)
[5] *Id.* at 5 (¶ 23).
[6] Anderson Decl. – ECF No. 34-1 at 2 (¶ 3).
[7] Compl. – ECF No. 1 at 3 (¶ 12).
[8] ECF Nos. 12-13 (proof of service).

offending statements on www.quora.com; at the plaintiffs' request, Quora removed the material.[9] Yakovlev posted the same material on YouTube. The plaintiffs asked YouTube to remove the material, but YouTube refused.[10] The Quora and YouTube posts are "substantially similar and contain identical defamatory [s]tatements."[11] The challenged statements appear as answers to the questions: "Serendipity Ventures[:] What was your experience like[?]" and "Has anyone ever worked with Steven (Steve) Vachani or Serendipity Ventures[?]"[12] Under the name Arthur Yakovlev appear the following responses (all grammar, usage, spelling, and punctuation in original):

- Did not pay in terms. He paid less than $300 per month. In hos house I am was robbed. If you need more money don't agree. Last time he did not pay 1 months, guys was without food. Did not pay for place where you live. When I am asked live alone in separated place he is not was agree with it. All time problems with money. If you need help with hospital or gym - he not will do it.
- So if you wonna join in startup and work with him without money and sometimes without food — you can do it. Without health help you can join and maybe take millions.
- He is without money.[13]

Under the name Anonymous the following statements appear:

- He is con-artist of the highest order.
- He is being sued by the employees for embezzlement, did not pay salaries, probably stole company money. He is a liar, a thief and as it has already been proven by US courts, a convicted SPAMMER.
- He now owes money both in his resident country of Brazil and also in the USA, he owes MILLIONS and probably will never be able to pay.

---

[9] Compl. – ECF No. 1 at 1-2, 5 (¶¶ 1-3, 24).

[10] Id. at 6 (¶ 28). The complaint provides links to the videos; they no longer have accessible content.

[11] Id. at 5 (¶ 26).

[12] ECF Nos. 1-2 at 2, 1-3 at 2.

[13] Compl. – ECF No. 1 at 5-6 (¶ 26); Exhibits – ECF Nos. 1-2 at 2, 1-3 at 2.

- Don't do business with this guy if you have the chance, he is morally corrupt. And a liar with no money.[14]

The plaintiffs explain that these statements also "appear[] as audio and video" on YouTube.[15] They call all the statements false.[16] They allege that the remarks were made with "malice" and an "intent to injure" them.[17] They have confirmed that defendant Yakovlev owns the YouTube accounts on which the offending material was posted.[18] They state that the same material was posted at a third website in addition to Quora and YouTube.[19]

About defendant Peres, the plaintiffs allege:

> Further defamatory statements of the same nature as those in the Quora Posts were posted by Defendant Lucien Peres on and through www.Facebook.com . . . . Peres sent direct defamatory messages to known associates of Vachani and posted comparable messages on the public "Timelines" of such associates on [Facebook].[20]

The plaintiffs' renewed Rule 55 motion is more specific. There the plaintiffs argue that Ms. Peres posted putatively defamatory content to the public social-media page of "Barney Pell, an associate of Plaintiff Vachani."[21] The plaintiffs point to the following posts by Ms. Peres (all errors in original):

- "I did not imagine that you are friends with Steve, This man is not good. He lives of appearances, he is bankrupt. There are several cases against him in Brazil. The man behind young people from other countries to work for him, but he does not pay and leave these people in distress."

---

[14] *Id.*

[15] Compl. – ECF No. 1 at 5 (¶ 26).

[16] *Id.*

[17] *Id.* at 7 (¶ 31).

[18] Anderson Decl. – ECF No. 34-1 at 2 (¶¶ 5-6).

[19] Compl. – ECF No. 1 at 5 (¶ 25). The third website, www.findncast.com, appears to be defunct.

[20] *Id.* at 2 (¶ 5).

[21] ECF No. 34 at 9.

ORDER — No. 15-cv-04296-LB                4

- "[M]ost processes is labor because he does not pay, or he does not meet according to the partners[.]"
- "[B]ecarefulll Steve are not good man or partner."[22]

The plaintiffs allege that these postings have caused them "real and actual loss in the form of reputational damage, compromised professional opportunities, emotional distress and out-of-pocket remedial costs, among other harms."[23] They state that that they have been damaged "in an amount not less than $75,000."[24]

## 2.   Procedural posture

The plaintiffs bring two claims challenging these posts: libel and invasion of privacy by publishing information that placed the plaintiffs in a false light.[25] They ask for general, special, and exemplary damages.[26] They seek compensatory damages "in an amount not less than $75,000," and punitive damages "in an amount not less than $150,000."[27] They requests costs of $525[28] and post-judgment interest under 28 U.S.C. § 1961(a).[29] They also seek an injunction that orders the defendants to remove the offending posts and to refrain "from repeating the defamation."[30] They have filed evidence supporting their claims.[31] The defendants, again, were served with a summons and the complaint but have not appeared.

---

[22] *Id.* at 9-10; *see* Ex. F – ECF No. 34-8 at 3-4,

[23] *Id.* at 3, 7 (¶¶ 10, 30).

[24] *Id.* at 7 (¶ 30).

[25] *Id.* at 7-11 (¶¶ 32-56).

[26] *E.g. id.* at 11.

[27] *E.g., id.* at 7 (¶¶ 30-31).

[28] Anderson Decl. – ECF No. 34-1 at 3 (¶¶ 7-8).

[29] ECF No. 34 at 15-16.

[30] Compl. – ECF No. 1 at 11; ECF No. 34 at 14. Strictly speaking, the complaint asks the court only for an injunction compelling the defendants to "depublish" the challenged material. The injunction against repeated defamation appears only in the plaintiffs' default-judgment motion. The court deems the latter relief to be the same "in kind" as the injunction sought in the complaint. *See* Fed. R. Civ. P. 54(c).

[31] *See* Compl. – ECF Nos. 1-2, 1-3 (exhibits); Anderson Decl. – ECF No. 34-1.

This is the plaintiffs' second motion for default judgment. The court denied their previous Rule 55 motion because they had not shown that the court could exercise personal jurisdiction over the defendants.[32] The court invited the plaintiffs to amend their complaint, or supplement their default-judgment motion, or both.[33] The plaintiffs have not amended their complaint, but their new motion slightly extends their personal-jurisdiction discussion.

## ANALYSIS

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for — and the court may grant — a default judgment against a defendant who has failed to plead or otherwise defend an action. *See Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). But default cannot save claims that are not sufficiently pleaded: "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). "The district court is not required to make detailed findings of fact." *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Nor must it necessarily hold a hearing before entering a default judgment. *See, e.g.,* Fed. R. Civ. P. 55(b)(2) (court "*may* conduct hearings . . . when it needs to . . . determine the amount of damages"). Relief awarded by default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment," *Draper*, 792 F.2d at 924-25; that decision lies within the court's discretion, *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Default judgments are generally disfavored because "cases should be decided on their merits whenever reasonably

---

[32] Order – ECF No. 27.

[33] *Id.* at 11.

possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In deciding whether to enter a default judgment, courts in the Ninth Circuit consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

### 1.   Jurisdiction

The court cannot enter a default judgment unless it has jurisdiction over both the subject matter and the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Williams v. Life Sav. and Loan,* 802 F.2d 1200, 1203 (10th Cir. 1986) (court has "affirmative duty" to ascertain jurisdiction in considering default judgment).

#### 1.1 Subject-matter jurisdiction

This court has subject-matter jurisdiction of this case under the diversity provisions of 28 U.S.C. § 1332. Plaintiff Vachani is a resident of California; plaintiff Serendipity Ventures is incorporated in Delaware; the defendants reside in Brazil.[34] The amount in controversy exceeds $75,000, excluding interest and costs.[35]

#### 1.2 Personal jurisdiction

"It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." *Donell v. Keppers*, 835 F. Supp. 2d 871, 876 (S.D. Cal. 2011) (default-judgment case) (quoting *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001)). The court previously held that the plaintiffs had not met this burden. More specifically, the court held that the plaintiffs had not adequately alleged that the defendants knew that their activity was directed toward, and would

---

[34] Compl. – ECF No. 1 at 3 (¶ 12).

[35] *See id.* at 9-11 (¶¶ 48, 56) (prayers for relief).

likely cause harm in, California. (ECF No. 27 at 9-10.) They therefore had not shown that the defendants had "purposefully directed" their conduct toward California, to yield constitutional "minimum contacts" with this state that would support personal jurisdiction. (*Id.* at 8-10.)

The plaintiffs had pointed to the fact that Google (which operates YouTube) is located in Mountain View, California; and they had alleged that defendant Yakovlev was their "former associate." (*Id.* at 9.) This court held that it would be "too inferential" to extrude from these things the notion that the defendants knew that their web postings would likely cause harm in California. (*Id.* at 9-10.) "Without more positive, direct, concrete allegations that the defendants knew that their conduct was likely to cause harm *in California*," the court held, "the plaintiffs . . . [had] not shown that the defendants have such minimum contacts with this state that personal jurisdiction can constitutionally extend over them." (*Id.* at 10) (emphasis in original).

The plaintiffs have added nothing to their renewed default-judgment motion that changes the court's mind on this point. Again, they have not amended their complaint to make new jurisdictional allegations; but they have extended the jurisdictional discussion in their Rule 55 motion. To the two items previously discussed — Google's location and Mr. Yakovlev's being the plaintiffs' "former associate" — the plaintiffs now argue that "several" of the allegedly libelous statements "specifically refer to a lawsuit pending" against Mr. Vachani in this district. (ECF No. 34 at 8-9.) The court does not think that this advances the plaintiffs' bid to establish personal jurisdiction.  First, the court has scoured the relevant material and believes that the plaintiffs are factually incorrect: Nothing in the challenged statements "specifically" refers to this other lawsuit — at least not in any way that is apparent on the face of those statements or that the plaintiffs have explained. (The material that the plaintiffs cite on this point — "Complaint, ECF No. 1, ¶¶ 6, 7" (*see* ECF No. 34 at 8) — says nothing about a civil lawsuit against Mr. Vachani.) Second, even if the allegedly libelous statements did mention a civil lawsuit against Mr. Vachani pending in this district, it is far from obvious that this would provide a constitutionally solid ground for finding that the defendants had "minimum contacts" with California that would support this court's assertion of personal jurisdiction over them. The plaintiffs have cited no authority showing that "purposeful direction" can arise from a defendant's mentioning a separate lawsuit in which the

plaintiff is a litigant. In the end, the court thinks that the plaintiffs are still asking the court to follow a chain of inference that is too attenuated to anchor constitutional jurisdiction.

Even if the court were inclined to hold that the defendants had purposefully directed their conduct toward this forum, that the plaintiffs had eked out that showing, still, under the whole of the circumstances, the court would not deem an exercise of personal jurisdiction over these defendants to "comport with fair play and substantial justice." *See, e.g., Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The plaintiffs' showing is especially attenuated with respect to defendant Peres. Ms. Peres, again, is allegedly the domestic partner of Mr. Yakovlev. The plaintiffs have shown that Ms. Peres posted to the Facebook page of a Mr. Pell, whom the plaintiffs describe as "an associate of Plaintiff Vachani." (ECF No. 34 at 9.) These are the only defamatory statements that the plaintiffs ascribe to Ms. Peres. Contrary to the plaintiffs' assertions, however, those posts do not make "specific references" (*id.* at 10) to the other suit that is pending against Mr. Vachani in this district. *See* (Ex. F – ECF No. 34-8, *passim*.) Indeed, these posts don't appear to even allude to such a lawsuit. *See id.*[36] And, as discussed below, Ms. Peres's statements are not obviously defamatory. The court thus sees no merit in the argument that these posts should permit long-arm personal jurisdiction over Ms. Peres.

\* \* \*

With respect to personal jurisdiction, this case remains in the position that it was in when the court denied the plaintiffs' previous default-judgment motion. For the reasons that the court gave more fully in its earlier order, as extended above, the court holds that it cannot constitutionally exercise personal jurisdiction over the defendants.

---

[36] The posts — or at least the exhibit that contains them — are mostly in Portuguese. *See* (Ex. F – ECF No. 34-8.) The plaintiffs have not provided a translation, so the court cannot say what the non-English material might say.

2.      **Merits of the plaintiff's claims — Sufficiency of the complaint**

Without personal jurisdiction, the court cannot grant the plaintiffs their requested default judgment. *See Tuli*, 172 F.3d at 712. The court thinks that it may be useful at this point to nonetheless share its substantive assessment of the plaintiffs' case, in case that helps to guide these proceedings in the future. The court thus turns to consider the plaintiffs' bid for default judgment under the Ninth Circuit's governing *Eitel* test. The second and third *Eitel* factors, in particular, direct the court to weigh "the merits of the plaintiff's substantive claims" and "the sufficiency of the complaint." Together, these require that the "plaintiff state a claim on which [he] may recover." *Pepsico*, 238 F. Supp. 2d at 1175 (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). This in turn requires the court to consider the elements of the claims in question: libel and invasion of privacy by false-light publication.

**2.1 Libel and defamation**

Libel in California law is a form of defamation. *See* Cal. Civ. Code § 44. More fully, libel "is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45; *see generally, e.g., Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007); *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645-47 (1999). "The elements of a libel claim are [thus]: (1) the intentional publication of a fact; (2) that is false; (c) unprivileged; and (4) has a natural tendency to injure or cause special damage." *eAdGear, Inc. v. Liu*, 2012 WL 2367805, *14 (N.D. Cal. June 21, 2012), *report and recommendation adopted,* 2012 WL 4005454 (N.D. Cal. Sept. 11, 2012) (citing *Maldonado,* 72 Cal. App. 4th at 645). "Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." *eAdGear*, 2012 WL 2367805, *14 (quoting *Maldonado,* 72 Cal. App. 4th at 645). If the challenged material is defamatory "on its face," meaning that it does not need further explanation to show that it is defamatory, then it is "actionable" without the plaintiff having to plead special damages. *See* Cal. Civ. Code §§ 45a, 48a. Special damages in this

context include "all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation . . . as a result of the alleged libel . . . ." Cal. Civ. Code 48a(4)(b) (quoted in *Walker v. Kiousis*, 93 Cal. App. 4th 1432, 1441 (2001)).

The plaintiffs have sufficiently stated libel against Mr. Yakovlev. They allege that the offending statements are false and unprivileged. The statements are in a context in which the plaintiffs are clearly named. Any reader would both understand the statements as defamatory and as concerning the plaintiffs.[37] The most pointed statements would in themselves tend to expose the plaintiffs to "hatred, contempt, ridicule, or obloquy," would cause others to "shun[]" or "avoid" them, and would tend to injure them in their business as startup investors. *See* Cal. Civ. Code § 45. The court indeed finds this material defamatory *per se* — or, in California's statutory terms, libelous "on its face." *See* Cal. Civ. Code § 45a. Several of the target assertions meet this description. The California Court of Appeals has said: "Perhaps the clearest example of libel per se is an accusation of crime." *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 385 (1986). It is therefore enough for present purposes to note the statements that plaintiff Vachani is a "thief" who "probably stole company money" and a "convicted SPAMMER." As a matter of law, these constitute libel *per se*.

The plaintiffs have not proven libel against Ms. Peres. There is nothing in the only statements that are ascribed to her — the Facebook posts (Ex. F – ECF No. 34-8) — that is obviously defamatory. Or, perhaps more accurately, there is nothing that is defamatory "on its face" in the way that some of the comments attributed to Mr. Yakovlev are. If her comments are unpleasant and unwelcome, the court thinks that the bar for libel cannot be so low, particularly where the court is being asked to assess those comments in the context of a default.

---

[37] *See* Compl. – ECF No. 1 at 6 (¶ 27).

**2.2 False light**

The plaintiffs also claim that the defendants' "false and disparaging [s]tatements" cast the plaintiffs "in a false light in the public eye."[38] The standard California jury instructions give the following requisite elements of false light:

1. The defendant "publicized information or material that showed [the plaintiff] in a false light";
2. "The false light created by the publication would be highly offensive to a reasonable person in [the plaintiff's] position";
3. The defendant "was negligent in determining the truth of the information or whether" publishing it would create a false impression; or, in matters of public concern, "there is clear and convincing evidence" that the defendant "knew the publication would create a false impression" about the plaintiff or "acted with reckless disregard for the truth";
4. The plaintiff was harmed; and
5. The defendant's conduct was a "substantial factor" in causing that harm.

*See* Cal. Civ. Jury Instructions ("CACI") 1802. The false-light plaintiff "must prove all" the foregoing. *Id.* While there are differences between libel and false-light theories, the two overlap significantly, sometimes completely. The Supreme Court of California has said: "[A] 'false light' cause of action 'is in substance equivalent to . . . [a] libel claim, and should meet the same requirements of the libel claim . . . .'" *Briscoe v. Reader's Digest Ass'n,* 4 Cal.3d 529, 543 (1971) (quoting *Kapellas v. Kofman*, 1 Cal.3d 20, 35 n. 16 (1969)).[39] Thus, "[w]hen a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1385 n. 13 (1999).

The plaintiffs have established false light against Mr. Yakovlev. Given the content of the challenged statements, and the dictate of California law, the false-light claim may quicken

---

[38] *Id.* at 10 (¶¶ 49-56).

[39] *Briscoe* was overruled on other grounds by *Gates v. Discovery Commc'ns, Inc.*, 34 Cal. 4th 679 (2004).

immediately as a result of the plaintiffs' establishing libel. *See id.* With respect to one particular and signature element of false light, though, at least some of the statements ("thief," "liar," "con artist," "morally corrupt") would be "highly offensive to a reasonable person." The plaintiffs allege that the defendants intentionally published this false material "with malice" and with an intent to injure the plaintiffs in the public eye. And these statements caused the plaintiffs harm.[40]

For the reasons given above, the plaintiffs have not established false light against Ms. Peres.

### 2.3 Injunction

The plaintiffs also ask the court to order the defendants to remove the offending posts and to enjoin them "from repeating the defamation."[41] Despite obvious First Amendment concerns, such an injunction is permissible in defamation cases. It is also a permitted form of remedy in California defamation law. After reviewing United States Supreme Court precedent, California's high court held that, "following a trial at which it is determined that the defendant defamed the plaintiff, the court may issue an injunction prohibiting the defendant from repeating the statements determined to be defamatory." *Balboa Island Village Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1151-56 (2007). "[A]n injunction . . . that does no more than prohibit the defendant from repeating the defamation[] is not a prior restraint and does not offend the First Amendment." *Id.* at 1148.

To the extent that the plaintiff filed the lawsuit to force the defendants to take down the offending content, that objective has been accomplished. And again, absent personal jurisdiction, the court cannot order the defendants to remove the content. To the extent that providers such as YouTube or Quora need confirmation that statements that Mr. Vachani is a "thief" who "probably stole company money" and is a "convicted SPAMMER," the statements are libel *per se*.

---

[40] For all these points, see Compl. – ECF No. 1 at 10. The court recognizes the Ninth Circuit's recent decision in *Facebook v. Vachani,* a case where Mr. Vachani is a named defendant, illuminates the allegations about "convicted spammer." *See* No. 13-17102, slip op. at 5, 9–12 (9th Cir. July 12, 2016).

[41] Compl. – ECF No. 1 at 11; ECF No. 34 at 14.

**2.4 Damages**

That the plaintiffs have shown libel *per se* entitles them to damages. Where libel *per se* is proven, "'[d]amage to plaintiff's reputation is conclusively presumed and he need not introduce any evidence of actual damages in order to obtain or sustain an award of damages' including, in an appropriate case, punitive damages." *Barnes-Hind,* 181 Cal. App. 3d at 382 (quoting *Contento v. Mitchell*, 28 Cal. App. 3d 356, 356-58 (1972)). On the other hand, on default judgment, the court need not accept as true allegations of damage. *TeleVideo Systems*, 826 F.2d at 917-18. Damages moreover are always subject to the fundamental constraint that they not be speculative. *See, e.g., Frustuck v. City of Fairfax,* 212 Cal. App. 2d 345, 367-68 (1963) (tort) (invoking "the fundamental rule that damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery"); *Cal. Press Mfg. Co. v. Stafford Packing Co.*, 192 Cal. 479, 483-86 (1923) (contract). (The quality of the damages evidence, the court thinks, can be considered under the *Eitel* rubrics of both the "merits of the plaintiff's substantive claims" and the "sufficiency of the complaint.") Finally, the entry of default judgment rests in the court's discretion. *See Draper*, 792 F.2d at 924-25.

**2.4.1   Compensatory damages**

The plaintiffs claim that the defendants' statements have caused them "actual loss in the form of reputational damage, compromised professional opportunities, emotional distress and out-of-pocket remedial costs, among other harms."[42] Without specifying the components of that injury, they state that they have been damaged "in an amount not less than $75,000."[43] The plaintiffs did not further specify or solidify this assertion. The requested compensatory damages, even in the context of a Rule 55 default-judgment motion, thus remain essentially speculative. Even if some harm is conclusively presumed, *Barnes-Hind,* 181 Cal. App. 3d at 382, moreover, the amount of that harm is open to determination. In the present circumstances, given the nature of the

---

[42] Compl. – ECF No. 1 at 3, 7 (¶¶ 10, 30).

[43] *Id.* at 7 (¶ 30).

defamation and the plaintiffs' inability to better prove their actual losses, the court in its discretion thinks that $75,000 would be an excessive default-judgment award.

The plaintiffs' request here is general — and, as the court has already said, essentially speculative. It seems meant more to invoke this court's diversity jurisdiction than to reflect the harm that the offending statements may have caused. Put differently, the requested damages are not tailored to the specific misconduct at issue. *See Bd. of Trs. of the Sheet Metal Workers Health Care Plan v. Superhall Mech., Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, *3-4 (N.D. Cal. June 30, 2011) (awarding requested default damages where plaintiff "provided adequate evidence" supporting specific amounts sought).

The default decision is ultimately discretionary. The plaintiff retains the burden to prove damages. And here, the plaintiff has not directed the court to default awards that have been awarded in comparable cases. The court also notes the relatively limited nature of the offending speech. This does not reflect a sustained campaign to disparage the plaintiffs, nor a commercially mercenary effort to divert business from the plaintiffs to the defendants. In another case involving much more elaborated damages with a potentially consequential commercial effect, the court awarded $20,000. Without some frame of reference supporting a contrary conclusion, the court does not think that amount is appropriate under the circumstances here. The court's view also is that it is one thing to enjoin repeated defamation. It is another to impose a monetary penalty that might deter speech by others, who may fear that by expressing (what they believe to be) legitimate grievances, they may incur a substantial fine.

These were issues that the court would have discussed — along with the issues of personal jurisdiction — had plaintiffs' counsel appeared at the hearing. For now, the court observes only that the claimed amount is excessive. And that because the offending content is removed, the point of pursuing default judgment has been accomplished.

### 2.4.2 Punitive damages

Punitive damages can be recovered in defamation. *See Barnes-Hind*, 181 Cal. App. 3d at 382. Furthermore, because the plaintiffs have established libel *per se*, they need not prove actual injury

to anchor a punitive award; if such an award is otherwise appropriate, the libel *per se* can itself support punitive damages. *See id.* "It is a well-settled rule that there can be no award of punitive damages without a finding of actual damages. . . . However, it is equally well settled that in an action for damages based on language defamatory *per se*, damage to plaintiff's reputation is conclusively presumed and he need not introduce any evidence of actual damages in order to obtain or sustain an award of damages." *Contento*, 28 Cal. App. 3d at 356-58. This, again, can include punitive damages. *Barnes-Hind*, 181 Cal. App. 3d at 382.

What, then, must plaintiffs generally show to gain a punitive award? "Under California law, punitive damages are appropriate where a plaintiff establishes by *clear and convincing evidence* that the defendant is guilty of (1) fraud, (2) oppression or (3) malice." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 998 (9th Cir. 2006) (citing Cal. Civ. Code § 3294(a)) (emphasis in *First Alliance*). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code § 3294(c)(2). "'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294(c)(3).

The plaintiffs have not established sufficient ground for a punitive award. They have not provided "clear and convincing evidence" of the sort of conduct that must underwrite such an award. They offer only the raw allegation that the defendants acted "maliciously and intentionally" or at least with a "conscious disregard" for the plaintiffs' rights.[44] The court does not think that this boilerplate incantation clearly and convincingly proves the defendants acted maliciously or with a conscious disregard for the plaintiffs' rights. On the record before it, the court would not be inclined to award punitive damages.

---

[44] *E.g., id.* at 2, 10 (¶¶ 9, 55).

### 3. The remaining *Eitel* factors

The remaining *Eitel* factors weigh in favor granting a default judgment.

#### 3.1 Prejudice to the plaintiffs

The plaintiffs properly served the defendants. The defendants nonetheless have not answered or otherwise appeared in this case. If the plaintiffs are not granted the default judgment, they may have no recourse to end the allegedly defamatory behavior: The defendants appear to reside outside the United States (in Brazil), and YouTube has rejected the plaintiffs' request to remove the offending content from its website. Withholding a default judgment would thus significantly impair the plaintiffs' efforts to remove the allegedly false and certainly disparaging remarks from public view.

#### 3.2 Dispute over material facts

Because the defendants never answered the complaint, or submitted anything explaining their position, it is impossible to say whether there are disputed facts, much less which facts might be genuinely contested. The record does not otherwise suggest that there are disputed material facts.

#### 3.3 Default due to excusable neglect

The record similarly contains no information suggesting that the default may be due to excusable neglect.

#### 3.4 Money at stake

When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. *See Eitel*, 782 F.2d at 1472 (request for $3-million award, given disputed material facts, supported decision not to enter default judgment). In the present circumstances, the court thinks that the amount of damages sought in the complaint — $75,000 compensatory and $150,000 punitive — exceed the amount that could be justly entered in a default judgment.

**3.5 Strong federal policy of trying cases on their merits**

The court is aware that the "strong policy" underlying the federal procedural rules favors trying cases on their merits. *See Eitel*, 782 F.2d at 1471-72. Default judgment is nevertheless appropriate when a defendant refuses to litigate a case. Fed. R. Civ. P. 55(b); *see Bd. of Trs. v. RBS Washington Blvd, LLC*, 2010 WL 145097, *4 (N.D. Cal. Jan. 8, 2010). Given how the earlier *Eitel* factors resolve in this case, and the defendants' utter absence from this suit, this "strong" policy preference does not outweigh the plaintiffs' procedural right to obtain what is on all heads an appropriate default judgment.

## CONCLUSION

The court denies the plaintiffs' renewed motion for default judgment. The plaintiffs have not shown that this court can exercise personal jurisdiction over the defendants.

The next date in the case is a case-management conference on January 19, 2017 at 11 a.m. Given that counsel has not made two court appearances, it is possible that Mr. Vachani is not pursuing the case. An updated case-management statement is due on January 12. If it is not filed, the court will dismiss the case without prejudice under Federal Rule of Civil Procedure 41(b).

This disposes of ECF No. 34.

**IT IS SO ORDERED.**

Dated: December 22, 2016

_____
LAUREL BEELER
United States Magistrate Judge