United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| STEVEN SURAJ VACHANI, et al., <br> Plaintiffs, <br> v. <br> ARTHUR YAKOVLEV, et al., <br> Defendants. | Case No. 15-cv-04296-LB <br><br> **ORDER DENYING DEFAULT JUDGMENT & CLOSING CASE** <br><br> Re: ECF No. 52 |

## INTRODUCTION

This internet-defamation case is before the court on the plaintiffs' renewed motion for default judgment.[1] This is the plaintiffs' fourth such motion. The court denied their first three motions because the plaintiffs had not shown that this court could constitutionally exercise personal jurisdiction over the defendants, who appear to be residents of Brazil.[2] The court has also expressed doubt about whether the plaintiffs could establish either of their claims (for libel and false light) against defendant Peres.[3] Under *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.

---

[1] Motion – ECF No. 52. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Orders – ECF No. 27 at 7–10; ECF No. 40 at 7–9; ECF No. 48.

[3] *See* Order – ECF No. 40 at 10–13.

ORDER – No. 15-cv-04296-LB

1986), the latter failing would hamper the plaintiffs' bid to obtain a default judgment against Ms. Peres.[4] The court can decide this motion without oral argument. *See* Civil L.R. § 7-1(b).

The court again denies the plaintiffs' motion. The court's previous analysis stands — and, with the additional comments made below, the court again adopts its earlier reasoning here.[5] (The court assumes that the reader is familiar with those prior orders.) The plaintiffs still have not shown that the defendants "purposefully directed" their conduct toward this forum within the meaning of governing jurisdictional doctrine. More specifically, they have not adequately shown that the defendants "expressly aimed" their conduct toward a known resident of California within the meaning of the "effects test" derived from *Calder v. Jones,* 465 U.S. 783 (1984). If the facts do show "purposeful direction," they do so only minimally; the court still concludes that asserting personal jurisdiction over the defendants "would not comport with fair play and substantial justice." *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This is especially true with respect to defendant Peres. For that ultimate reason the court would still deny the default-judgment motion.

Furthermore — considering the "merits of [their] substantive claims" and the "sufficiency of the complaint," *Eitel*, 782 F.2d at 1471–72 — the plaintiffs still seem unlikely to prove libel or false light against Ms. Peres. This too cuts against granting a default judgment against her. *See id.*

## ANALYSIS

The plaintiffs' latest motion puts a new emphasis on the defendants' knowledge. Specifically, the plaintiffs again point out that, as their former employee, defendant Yakovlev would likely know that Mr. Vachani resides in California. It is therefore reasonable (the plaintiffs say) to conclude both that Mr. Yakovlev "expressly aimed" his online gripes at someone whom he knew to be a California resident, and that he knew that he would likely cause harm in this state.[6]

---

[4] *Id.*

[5] *See id.* at 7–9; ECF No. 27 at 7–10.

[6] The plaintiffs suggest other grounds from which the court might infer that Mr. Yakovlev knew that

The court has already mostly addressed this issue. It has found Mr. Yakovlev's inferred knowledge too lonely and slim a reed on which to hang transnational personal jurisdiction. In their latest motion, though, the plaintiffs point with new clarity and force to a Ninth Circuit decision that they say decides the issue in their favor. That case is *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011). The Ninth Circuit there wrote: "[T]he 'express aiming' requirement [of *Calder*] . . . is satisfied when 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff *whom the defendant knows to be a resident of the forum* state.'" *Id.* at 1077 (emphasis added) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000)).[7] That, in the plaintiffs' view, seals the jurisdictional analysis.

The court understands the plaintiffs' argument. The court nevertheless concludes that it cannot apply *CollegeSource* so broadly.

First, other appellate and district-court decisions in this circuit have read *CollegeSource*, and have applied the "express aiming" test, more restrictively. These cases cast doubt on whether *CollegeSource* enunciated quite so broad a rule. A court in this district has thus explained:

> Despite [its] seemingly broad formulation, . . . *CollegeSource **did not give the defendant's knowledge of the plaintiff's residence dispositive weight***, but rather concluded that [defendant] Academy One — a company that competed with CollegeSource "in the market to assist students and educational institutions with the college transfer process," [*CollegeSource*] at *1 — had expressly aimed its conduct at the forum due to its alleged individual ***targeting of CollegeSource's California business*** and the fact that "CollegeSource and AcademyOne were ***direct competitors*** in a relatively small industry." *Id*. at *9.

*Lang v. Morris*, 823 F. Supp. 2d 966, 973 (N.D. Cal. 2011) (emphases added). "Thus," the *Lang* court concluded, "the full analysis in *CollegeSource*" is "entirely consistent" with earlier Ninth Circuit decisions that had taken a more stringent approach to "express aiming." *Lang*, 823 F. Supp. 2d at 972–73 (discussing *Love v. Associated Newspapers, Ltd.,* 611 F.3d 601 (9th Cir. 2010) and

---

Mr. Vachani is a California resident. They mention another, unrelated lawsuit against Mr. Vachani in California, and Mr. Vachani's relationship with a third party who is not a litigant here. The court has addressed these items before and has not changed its mind. These neither show Mr. Yakovlev's knowledge of Mr. Vachani's residence, nor otherwise provide good grounds for stretching personal jurisdiction over the foreign defendants. That Mr. Yakovlev used to work for Mr. Vachani is the only fact that plausibly suggests that the former might have known that the latter lives in California.

[7] *See* ECF No. 52 at 10.

*Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124 (9th Cir. 2010)). This court basically agrees with this aspect of *Lang*.

Second, *CollegeSource* is factually different from this case. In *CollegeSource* there were more factual pillars on which to rest a firm decision that the defendant had expressly aimed at a known California resident. Thus, in distinguishing *CollegeSource*, a sister district usefully described *CollegeSource's* operative facts:

> In *CollegeSource,* one website offering college referral services copied material from a [California] competitor's website and posted it on its own site. Prior to posting the material, the defendant made phone calls and sent emails and letters to the plaintiff seeking to purchase the copied material. The court found that these communications were a part of the defendant's efforts to obtain and make commercial use of the plaintiff's copyrighted material and showed that in posting the infringing materials defendant had intentionally aimed at the plaintiff in the forum.
> Defendants, unlike those in *CollegeSource,* did not have any contacts with the forum state that enabled or contributed to their promotional activities.

*Wine Grp. LLC v. Levitation Mgmt., LLC*, 2011 WL 4738335, at *9 (E.D. Cal. Oct. 6, 2011).

Like *Wine Group*, this case shows less defendant contact with California, and less active "targeting" of the California resident, than did *CollegeSource*. Here, at most, the facts show only Mr. Yakovlev's bare knowledge of Mr. Vachani's California residence. This court is not convinced that, even under *CollegeSource*, Mr. Yakovlev's inferred knowledge should be given "dispositive weight" in the specific-jurisdiction analysis.

Acknowledging the fuller factual landscape of *CollegSource* limits the effective reach of that case's ostensibly broad "express aiming" sub-rule. Even under *CollegeSource,* it is less than clear that a defendant's bare knowledge of the plaintiff's residence can alone support specific personal jurisdiction. Much less can it be said that jurisdiction must follow in every case in which the defendant may have known that the plaintiff was a forum resident. In some situations the defendant's knowledge will count for more; in other cases, it will matter less.

There remains the discrete question of "fair play and substantial justice." The court continues to think that this mandatory and important backstop prevents an assertion of jurisdiction over the defendants. Even if the plaintiffs have minimally satisfied the "express aiming" and hence the

"purposeful direction" tests, in other words, the court still concludes that hauling the defendants from Brazil into California court, in these circumstances, "would not comport with fair play and substantial justice." *See Schwarzenegger*, 374 F.3d at 801–02 (quoting *International Shoe*, 326 U.S. at 316). Again, this is especially true of Ms. Peres.

* * *

At this point, the court would offer one final word. It is not inconceivable that the plaintiffs have the better view of personal jurisdiction. Perhaps specific personal jurisdiction can extend internationally, consistent with due process, where a defendant has posted a handful of unwelcome comments on the internet, and where the defendant's "minimum contacts" consist only in knowing that the plaintiff resides in the forum state — a contact bolstered, perhaps, by the fact that the knowledge is inferred from the parties' past personal relationship. That seems a fine thread from which to spin a rather sweeping jurisdiction. This case, and cases like it, pose a hard question at the intersection of judicial power and contemporary technology. If personal jurisdiction is to flow from these facts, then that rule must be laid down first by an appellate court. This court of first resort must err on the side of conservatism. Particularly where the issue is the reach of judicial power. On the facts before it, and under the law as it best reads it, the court denies the plaintiffs' motion for default judgment.

* * *

## CONCLUSION

The plaintiffs' motion for default judgment is denied. Because the court has held that it cannot exercise personal jurisdiction over the defendants, those defendants are dismissed from this suit. The plaintiffs have now had multiple opportunities to identify facts that would support personal jurisdiction. Further amendment would appear to be futile. The court therefore dismisses the defendants without prejudice to the plaintiffs' claims against them, but without leave to amend the pleadings in this case. The court directs the clerk of court to close this file. This disposes of ECF No. 52.

**IT IS SO ORDERED.**

Dated: July 5, 2017

LAUREL BEELER
United States Magistrate Judge